**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Glass, | ) No. CV 07-1835-PHX-MHM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Intel Corporation, | ) |
| Defendant. | ) |

On September 25, 2007, Plaintiff Kevin Glass ("Glass") filed a complaint against his former employer, Defendant Intel Corporation ("Intel"). (Dkt. #1). On October 14, 2008, Defendant filed a Motion for Summary Judgment to dismiss all of the claims asserted against it by Plaintiff. (Dkt. #44). After reviewing the pleadings and determining oral argument is unnecessary, the Court issues the following Order.

**I.     BACKGROUND**

Glass began working for Intel as an engineer in 1995; he was fired in February of 2007. (Dkt. #1). The details of Glass's employment are set forth in Glass v. Intel Corp. ("Glass I"), 2009 U.S. Dist. LEXIS 19581 (D. Ariz. Mar. 11, 2009). Glass I concerned Glass' claims against Intel for discrimination and retaliation based on age and disability. The Court ultimately concluded that Glass had failed to create a genuine issue of material fact on any of his claims and that Intel was entitled to judgment as a matter of law. The claims in

this case are substantively identical to the ones made in Glass I, here, Glass has sued Intel, the same Defendant, for discrimination and retaliation based on age and disability. Unlike Glass I, however, this case concerns events taking place after Glass received an email from his supervisor, Hamid Rangchi, on November 3, 2005, up until Glass was termination by Intel.. Id., at *1–2.

The facts of the case are as follows. On November 3, 2005, Glass' supervisor sent him the following email:

> On November 3, 2005, Rangchi [] emailed Glass to take issue with his performance. The email contained a detailed structured work plan that Rangchi had developed for Glass to finish within the following five weeks. Rangchi also noted that Glass should read through the plan, because it was to be discussed at a meeting between the two men on the following day, November 4, 2005. The next day, Glass emailed Ragnchi to criticize the suggestions contained in the five week work plan. Glass accused Rangchi of making significant misrepresentations regarding his performance. Rangchi responded to the email, reminding Glass that they would be discussing the plan during their afternoon meeting. Shortly thereafter, Glass canceled the meeting. On the following Monday, Glass filed his fifth charge of discrimination with the EEOC, challenging Ranchi's . . . email, among other things. . . .

*7–8

On February 8, 2006, Rangchi submitted a corrective action plan to Plaintiff "that provided Glass with sixty days to either improve his performance or face termination. (Dkt. #44). The next day, Glass commenced his third medical leave of absence for depression, which lasted for nearly a year. (Id.). Pursuant to Intel's policies, Glass received job protection for the first twelve weeks of his leave of absence. (Id.).

Eight months into Plaintiff's leave of absence, Intel discontinued funding the project Plaintiff had been working on, and Plaintiff's position, along with the positions of other members of the project was eliminated. (Id.). Plaintiff's employment with Intel was terminated when his leave expired in February 2007. (Id.).

According to Plaintiff, before being terminated, "Plaintiff was harassed by his supervisors and manages. The harassment included being told to 'drop' his lawsuit or 'suffer the consequences,' followed by a correction action plan designed to remove him from employment, being given deadlines which are impossible to meet, being denied the ability to take scheduled vacations, and being unfairly evaluated, leading to loss of wage increases,

1 promotions, transfers, and re-hiring, in addition to the termination. . . ." (Id.). Plaintiff claims to have tried finding other jobs within Intel, but, despite dozens of applications he allegedly submitted within Intel, Intel has refused to re-hire Plaintiff in any capacity, "despite having openings for which Plaintiff is qualified." (Id.).

On January 25, 2008, Plaintiff filed a complaint against Defendant alleging the following: (1) discrimination on the basis of mental disability under the Americans with Disability Act ("ADA"); (2) harassment; (3) retaliation for opposing discriminatory practices under the ADA; (4) discrimination on the basis of age under the Age Discrimination in Employment Act ("ADEA"); (5) retaliation for opposing discriminatory practices under the ADEA; (6) failure to accommodate a disability under the ADA; (7) breach of contract; and (8) intentional infliction of emotional distress. (Dkt. #1). On October 24, 2008, Defendant filed a motion for summary judgment to dismiss all of Plaintiff's claims.

## II.  STANDARD OF REVIEW

A motion for summary judgment may be granted only if the moving party shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Likewise, to defeat a motion for summary judgment, the non-moving party must show that there *are* genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249. All justifiable inferences are to be drawn in favor of the nonmovant. Id. at 255.

## III.  DISCUSSION

### A.  ADA-Related Claims

Plaintiff alleges Defendant discriminated against him on the basis of a mental disability in violation of the ADA, 42 U.S.C. §§ 12101 et seq. (Dkt. #1). Plaintiff further alleges Defendant failed to accommodate his disability pursuant to the ADA. (Id.).

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). In order to prevail on a claim under the ADA, a plaintiff must establish that he has a disability. Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1133 (9th Cir. 2001).

The mental disability Plaintiff alleges he suffers from is "depression." (Dkt. #1). In Glass I, Plaintiff alleged the same mental disability, and this Court found Plaintiff could not prove that he had suffered from a depression since he had not submitted any evidence other than his own hearsay declarations regarding his doctors' supposed diagnosis and treatment. 2009 U.S. Dist. LEXIS 19581, at *14–20. In particular, the Court stated, "When faced with a total absence of admissible medical evidence to support his claim of suffering from a mental disability, the Court must conclude that Glass was not disabled for purposes of the ADA." Id. At *15–16. Likewise, in the instant case, Glass has failed to presented any additional evidence to support an inference that he suffers from an ADA qualifying disability. Moreover, in the instant lawsuit, Glass has not even attempted to present any evidence whatsoever—admissible or not—to support a claim of mental disability under the ADA. Therefore, because this Court has already found Plaintiff does not suffer from a disability as defined by the ADA, and because he submitted no evidence on this point in the instant case, the Court sees no reason to reach a different result than the result reached in Glass I. Accordingly, the Court finds that Glass' ADA claims fail as a matter of law.

**B.     ADEA-Related Claims**

Plaintiff alleges Defendant discriminated against him on the basis of age in violation of the ADEA, 29 U.S.C. §§ 623 et seq. (Dkt. #1). Under the ADEA, a plaintiff must establish the following: he was (1) at least 40 years old; (2) performing his job satisfactorily; (3) subject to an adverse employment action; and (4) either replaced by or treated less favorably than similarly situated individuals outside the protected class. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).

Like Glass' disability claim, there is almost nothing to distinguish Glass' claim of age discrimination in Glass I with his claim of age discrimination in the instant lawsuit. In fact,

the only difference between the two cases is that in this case, Glass was subject to an adverse employment action when he was terminated from Intel.

With respect to the last element, whether Glass was replaced by or treated less favorably than similarly situated individuals outside the protected class, Glass asserts that the individuals who were similarly situated included "at least *two* who were younger than Plaintiff, who is 52: Rangchi, age 47 and [Marty] Denham, age 48." (Dkt. #50) (emphasis in original). Rangchi was Plaintiff's functional manager, and Denham supervised Plaintiff on a day-to-day basis. (Dkt. #50). The Ninth Circuit has held that "individuals are similarly situated when they have similar jobs and display similar conduct. . . . Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." Vasquez v. Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).

Because Rangchi and Denham were supervisors to Plaintiff, they were not similarly situated to Plaintiff. Plaintiff has thus failed to satisfy the final element of the ADEA claim. The claim is therefore dismissed. It is also worth noting that neither Rangchi nor Denham are outside the protected class, since both are over the age of 40.

**C.    Harassment**

Plaintiff alleges Defendant harassed him on the basis of his age and disability, in violation of the ADA and ADEA. (Dkt. #1). Curiously, Plaintiff does not cite to any provision of the ADA, ADEA or to any case law. Instead, Plaintiff argues that an employer "may be held liable for the racially harassing conduct of employees. . . ." (Dkt. #50). Plaintiff goes on to cite U.S. Supreme Court and Ninth Circuit cases addressing racially harassing conduct and sexual harassment.

The ADA and ADEA do not cover claims of harassment; they cover claims of discrimination. Furthermore, nothing in the record suggests that Plaintiff's race or gender played any role whatsoever role in events giving rise to the instant action. This case simply is not about race or sex. Plaintiff has failed to present a cognizable harassment claim.

**D.    Retaliation**

Plaintiff alleges Defendant retaliated against him "for taking medical leave and seeking accommodation for a disability, for filing two lawsuits, and filing administrative claims with the EEOC and the Arizona Attorney General's Office, and for complaining about harassment to his supervisors, in violation of the ADEA and Title VII, 42 U.S.C. § 2000e-3 et seq." (Dkt. #1). The retaliation allegedly occurred when Defendant denied Plaintiff job protection and terminated his employment. (Dkt. #50).

Plaintiff bears the initial burden of making out a prima facie case of retaliation. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003). If Plaintiff successfully does so, then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If Defendant articulates such a reason, then Plaintiff must demonstrate that the reason was merely a pretext for a discriminatory motive. Stegall, 350 F.3d at 1066.

In order to make out a prima facie case of retaliation, Plaintiff must show the following: (1) he was engaging in protected activity, (2) Defendant subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and Defendant's action. Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001). The last element is the only one that appears to be in dispute.

To prove a casual link between the protected activity and Defendant's action, Plaintiff alleges he was warned by his manager "to dismiss his EEOC charges 'or suffer the consequences.'" (Dkt. #50). According to Plaintiff, his manager was "true to that threat, . . . and negatively evaluated Plaintiff's performance." (Id.). Defendant disputes these allegations. (Dkt. #44).

As was the case in Glass I, the Court finds that this comment—to the extent it took place at all—was nothing more than a "stray remark," and therefore legally insufficient to justify an inference of retaliation. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918–19 (9th Cir. 1996) (finding that an employer's use of the phrase "old timers" did not support inference of discriminatory motive); Hopkins v. Elec. Data Sys. Corp., 196 F.3d 655,

658 (6th Cir. 1999) (finding that a supervisor's isolated reference to plaintiff as "the mentally ill guy on Prozac that is going to shoot the place up" was not direct evidence of discrimination).

However, even if the alleged statement made out a prima facie case of retaliation, Defendant had a legitimate, non-discriminatory reason for the adverse employment action. As the facts recited in Glass I show, beginning in late 1998, Plaintiff received a multitude of negative performance evaluations and ratings from his supervisors, was an unreliable employee—missing meetings without providing adequate notice and routinely postponing group meetings—produced work product that did not meet company expectations. This evidence is uncontroverted. As such, there is more than a substantial amount of evidence in the record to establish that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment at Intel. Therefore, Glass' retaliation claim also fails as a matter of law.

### E.     Breach of Contract

Plaintiff alleges Defendant violated the provisions of Plaintiff's employment contract "insofar as they relate to (1) accommodating disabilities; (2) granting leaves of absence; (3) evaluating employees; (4) granting raises and bonuses to employees; (5) re-hiring employees; (6) non-discrimination on the basis of age and disability." (Dkt. #1).

Under Arizona law, an employee has a claim against an employer for termination of employment only if the employer violated Arizona public policy or if the employer violated a written contract. Johnson v. Hispanic Broadcasters of Tucson, Inc., 2 P.3d 687, 689 (Ariz. Ct. App. 2000) (citing A.R.S. § 23-1501). Based on the information before this Court, it appears that the provisions Plaintiff claims Defendant violated are not terms of any employment contract signed by both Parties but rather the HR Guidelines.[1] (Dkts. #48, 50).

---

[1] Plaintiff does not allege that his termination violated any specific type of public policy.

1 Thus, Plaintiff presents no valid breach of contract claim against his employer under Arizona
2 law. The claim must therefore be dismissed.

### F. Intentional Infliction of Emotional Distress

Lastly, Glass alleges Intel acted "with reckless indifference to the probability of . . . causing Plaintiff to suffer extreme humiliation, mental anguish, and emotional and physical distress." (Dkt. #1). In particular, Glass asserts "the combination of illegal discrimination, harassment and retaliation, prohibited under federal law, is 'extreme conduct.'" (Dkt. #50).

The elements of the tort of intentional infliction of emotional distress include the following: (1) Defendant's conduct was "extreme" and "outrageous"; (2) Defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from its conduct; and (3) severe emotional distress occurred as a result of Defendant's conduct. Mintz v. Bell Atl. Sys. Leasing Int'l, Inc., 905 P.2d 559, 562–63 (Ariz. Ct. App. 1995). Glass has not presented any evidence at summary judgment that would allow a reasonable jury to conclude that Intel's conduct as an employer met the legal definition of extreme or outrageous behavior. Therefore, Glass' intentional infliction of emotional distress claim must also fail as a matter of law.

/ / /

| | |
|---|---|
| 1 | **Accordingly,** |
| 2 | **IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment. |
| 3 | (Dkt. #44.) |
| 4 | **IT IS FURTHER ORDERED** directing the clerk to enter judgment accordingly. |
| 5 | DATED this 28th day of September, 2009. |

Mary H. Murguia
United States District Judge